**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:                                                                          Chapter 13

GLEN D. ROBERTS and
SHARON ROBERTS,
                                                                                    Case No.: 811-78577-reg
                    Debtors.

----------------------------------------------------------------x

## MEMORANDUM DECISION

Before the Court is a motion by the Debtors, Glen and Sharon Roberts, for an order (a) declaring that the net proceeds of approximately $122,000 from the sale of a house inherited more than 180 days post-petition are not property of the chapter 13 estate, and (b) modifying their chapter 13 plan to use a portion of the Sale Proceeds to pay the amount remaining due under the confirmed Plan (approximately $22,570) to the chapter 13 trustee, in a lump sum in full satisfaction of the Debtors' remaining monthly plan obligations.  In the alternative, if the sale proceeds are found to be property of the estate and the Debtors are required to turn them over to the Trustee, they seek to downwardly modify the plan and discontinue any further monthly payments to account for decreased income resulting from Sharon's loss of employment.  The chapter 13 trustee opposes the relief sought in the motion.  He argues that the sale proceeds are property of the estate and asks this Court to either (1) compel the Debtors to turn them over to him for distribution to creditors in addition to the Debtors' current monthly plan obligations; or (2) upwardly modify the plan and increase monthly payments to include the sale proceeds in the distributions to creditors.

This case presents two legal issues.  First, whether an inheritance received by a chapter 13 debtor more than 180 days post-petition becomes property of the estate under §§ 541 and

1306 of the Bankruptcy Code. Second, if it is property of the estate, what effect does that have on the chapter 13 plan. This case also requires the Court to address the appropriate analysis to conduct when presented with a motion by a debtor seeking a downward modification of plan payments. In this sense, this decision is a corollary to this Court's previous decision in *In re Salpietro*, 492 B.R. 630, 637 (Bankr. E.D.N.Y. 2013), which imposed a threshold for consideration of an upward modification sought by the trustee or a creditor.

This Court finds that the sale proceeds are property of the estate, and adopts the majority view that § 1306(a) creates an exception to the 180-day time period of § 541(a)(5) in the chapter 13 context. Thus, any inheritance received by a chapter 13 debtor "after the commencement of the case but before the case is closed, dismissed, or converted" is property of the estate. The sale proceeds are not "income" to be factored into a monthly disposable income test, but rather are an asset to be included in the liquidation – a/k/a "best interest" – analysis of § 1325(a)(4) which sets the floor for total distributions to creditors that must be made by the chapter 13 debtor. That analysis should be conducted at the time of the proposed modification, not the time of the original plan confirmation.

The Court finds that the Debtors' motion to modify the Plan should be granted. However, absent an agreement among the parties, a further hearing is required to determine the degree and direction of any modification to account for both Sharon's loss of employment and the Debtors' receipt of the sale proceeds. As this Court previously held in *In re Salpietro*, the projected disposable income test of §1325(b) of the Code is not applicable to modifications, but §§ 1325(a) and 1322 are.

# FACTS

The Debtors filed a joint chapter 13 petition on December 8, 2011 (the "Petition Date"). On April 5, 2012, the Court confirmed the Debtors' Second Amended Chapter 13 Plan (the "Plan"). Pursuant to the Plan, the Debtors are to make plan payments of $1,400.00 per month from January 8, 2012 through March 8, 2012, and $610.00 per month from April 8, 2012 through December 8, 2016. These payments provide a calculated *pro rata* distribution of not less than 10% to unsecured creditors. The Plan further provides that "[t]he future earnings of the debtor(s) are submitted to the supervision and control of the trustee." Finally, the Confirmation Order states:

> All property of the estate, including any income, earnings, or other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the Plan shall revest in the Debtor(s); provided however, that no property received by the trustee for the purpose of distribution under the Plan shall revest in the Debtor(s) except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the Plan. Such property as may revest in the Debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account.

[Order, dated April 6, 2006, Dkt #26]

On September 17, 2013, Glen's mother died intestate. Glen and his sister each inherited a half share of their mother's house. On October 22, 2013, Glen and his sister entered into a contract to sell the house for $270,000.00. Glen's share, half of the net proceeds, is approximately $122,000.00 (the "Sale Proceeds"). On October 14, 2013, Sharon's employment terminated, thereby reducing the Debtors' total monthly income.

On January 10, 2014, the Debtors moved the Court to: (1) authorize the sale of the house; (2) declare that the Sale Proceeds are not property of the estate; and (3) modify the Plan to pay the remaining $22,570.00 due under the Plan, in full satisfaction of the Debtors' Plan obligations. In the alternative, if the Court were to find the Sale Proceeds to be property of the estate, the Debtors move to modify the Plan to cease regular plan payments and turn over the Sale Proceeds to the Trustee in full satisfaction of the Debtors' Plan obligations. The chapter 13 trustee ("Trustee") opposes the motion on the grounds that the Debtors' post-petition inheritance is property of the estate, and therefore under § 1325(a)(4) any proposed modified plan must pay creditors at least $122,000. The Trustee wants the Debtors to turn over the Sale Proceeds to him or, in the alternative, upwardly modify their Plan to increase payments to account for the Sale Proceeds.

On February 6, 2014, the Court held a hearing on the motion. At the hearing, the Court granted the motion in part, authorizing the sale of the house with the caveat that the Debtors' counsel hold the Sale Proceeds in escrow pending this Memorandum Decision.

**DISCUSSION**

The first issue before the Court is whether the Sale Proceeds are property of the estate. If property of the estate, then the Sale Proceeds must be turned over to the Trustee in addition to the Debtors' obligation to continue to make regular Plan payments. If not property of the estate, then the Debtors have no obligation other than their obligations as established pursuant to their confirmed Plan; in fact, they intend to utilize a portion of the Sale Proceeds to satisfy the remainder of the Plan payments, approximately $22,570.

Section 541(a)(5) includes within a debtor's bankruptcy estate "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire *within 180 days* after such date (A) by bequest, devise, or inheritance." 11 U.S.C. § 541(a)(5) (emphasis added). Section 1306(a) provides that "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a).

There is no dispute that if Glen had inherited the house before or within 180 days after the Petition Date, the Sale Proceeds would constitute property of the estate. Here, Glen inherited the house more than 180 days after the Petition Date, but while the case was still open and unconverted. Therefore, whether or not the Sale Proceeds are property of the estate hinges on whether the 180-day time limitation of § 541(a)(5) applies in chapter 13 cases.

The majority view is that "§ 1306 modifies the § 541 time period in Chapter 13 cases," so that any property of the kind referred to in § 541(a)(5) acquired post-petition, while the case is pending under chapter 13, is property of the estate. *See, e.g.*, *Vannordstrand v. Hamilton (In re Vannordstrand)*, 356 B.R. 788 (B.A.P. 10th Cir. 2007); *see also Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013); *In re Ormiston*, 501 B.R. 303, 307 (Bankr. E.D.N.C. 2013); *Moser v. Mullican (In re Mullican)*, 417 B.R. 389 (Bankr. E.D. Tex. 2008) ("property that a Chapter 13 debtor acquires post-petition becomes property of the estate pursuant to §1306(a)(1), in contrast to the post-petition acquisitions that do not become part of a Chapter 7 or Chapter 11 estate"), *aff'd* 417 B.R. 408 (E.D. Tex. 2009); *In re Euerle*, 70 B.R. 72, 73 (Bankr. D.N.H. 1987).

The minority view is that § 1306(a) does not substitute the time limitations of § 541(a)(5). Rather, the reference in § 1306(a)(1) to "property of the kind specified" in § 541 is meant to incorporate the time limitations set forth in § 541(a)(5). *See In re Key*, 465 B.R. 709 (Bankr. S.D. Ga. 2012); *Le v. Walsh (In re Walsh)*, 07-60774, 2011 WL 2621018 (Bankr. S.D. Ga. June 15, 2011); *In re Schlottman*, 319 B.R. 23 (Bankr. M.D. Fla. 2004).

The Debtors ask this Court to adopt the minority view and argue that principles of statutory interpretation dictate "that effect should be given to every word of a statute whenever possible," *Leocal v. Ashcroft*, 543 U.S. 1, 3 (2004), and "if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). The Debtors argue that the majority interpretation of § 1306(a) is flawed because it voids the express provisions of the time limitations of § 541(a)(5) in chapter 13 cases. While the Court agrees that the statute is less than clear on this issue, the Court finds the cases advocating the minority view to be unpersuasive and declines to follow their reasoning. If the 180-day restriction of § 541(a)(5) applies in chapter 13 cases then § 1306(a)(1) and the phrase "in addition to" in § 1306(a) are superfluous and meaningless. *See Carroll v. Logan*, 735 F. 3d at 152 ("For if Section 541's 180-day rule restricts what is included in a Chapter 13 estate, then Section 1306(a), which expands the temporal restriction for Chapter 13 purposes, loses all meaning. By contrast, neither statute is rendered superfluous, and both are given effect, if Section 1306(a)'s extended timing applies to Chapter 13 estates and supplements Section 541 with property acquired before the Chapter 13 case is closed, dismissed, or converted.").

This Court finds that § 1306(a)(1) creates an exception to the general rule of § 541(a)(5), removing the 180-day limitation in the chapter 13 context. The Court finds that § 1306(a) brings

into the estate, in chapter 13 cases, any property that the debtor inherits post-petition but before the case is closed or converted, notwithstanding § 541(a)(5).[1]  Here, the Debtors' chapter 13 case has neither been closed nor converted, and therefore, as Glen's post-petition inheritance is property of the estate.

The Court is similarly unpersuaded by the Debtors' argument that the inheritance here is akin to pre-petition cash advances of the type present in *In re Almonte*, 397 B.R. 659 (Bankr. E.D.N.Y. 2008), and thus should not be property of the estate.  In that case, the Court held that pre-petition cash advances would not be included in the § 1325(b) disposable income analysis because they were unavailable going forward and thus could not accurately reflect projected disposable income available for distribution to creditors.  *Almonte* is inapposite because here, the inheritance was property acquired by the Debtor post-petition, not income, and also because § 1325(b) is inapplicable in the context of a post-confirmation chapter 13 plan modification.[2]

Having determined that the Sale Proceeds are property of the estate, the Court must now determine what effect this has on the Debtors' motion to modify the Plan.  Sections 1329(a)(1) and (2) vest in the Bankruptcy Court broad discretionary authority to modify a confirmed plan. In *In re Salpietro*, 492 B.R. 630, 637 (Bankr. E.D.N.Y. 2013), this Court held that while this discretion is broad it is not boundless and the Court would entertain a modification, "absent a

---

[1] Although this case involves a post-petition inheritance, the reasoning herein would arguably apply to any "interest in property that would have been property of the estate if such interest had been an interest of the debtor on the" petition date. 11 U.S.C. § 541(a)(5).

[2] The Debtors also contend that since the Order of Confirmation says, "[a]ll property of the estate shall revest in the debtor", the inheritance is currently vested in the debtor, pursuant to §1327(b), and is therefore not property of the estate.  The Trustee argues that the Order of Confirmation's declaration that property "shall revest" can only apply to property vested in the Debtors at the time of the filing and, as such, it does not apply here and the property is property of the estate.  While there is some case law supporting both propositions, the Court need not reach this issue because the Order of Confirmation provides that "[s]uch property as may revest in the Debtor(s) shall so revest upon the approval by the Court of the Trustee's Final Report and Account."  That there has been no approval by the Court of the Trustee's Final Report and Account is undisputed, and indisputable.  As such, the inheritance cannot have revested in the Debtors by operation of the Confirmation Order.

debtor's consent… only after the Court finds that a debtor has acted in bad faith, *or is not in compliance with their plan and the applicable provisions of the Bankruptcy Code.*" *Id*. (emphasis added). That threshold need not be met in this case where the modification has been proposed by the Debtors. It is within the discretion of the Court, vested by §1329(a), to modify a debtor's plan to reduce the amount of the plan payments if the debtor has experienced a loss of income. *See Ransom v. FIA Card Servs., N.A*., 131 S. Ct. 716, 730 (2011) ("the method that the Code provides for all Chapter 13 debtors (and their creditors) [is] modification of the plan in light of changed circumstances"); *In re Walker*, 114 B.R. 847, 849-50 (Bankr. N.D.N.Y. 1990) ("The debtor, on request with a showing of changed circumstances, may move to modify a plan only upon showing of change in financial circumstances since the confirmation").

As in *Salpietro*, the proposed modified plan must satisfy the requirements of §§ 1322(a), 1322(b), 1323(c), and 1325(a) of the Bankruptcy Code. Neither § 1322(b) nor § 1323(c) are applicable in this case, but §1325(a) and 1322(a) are.[3] The Court's finding that the Sale Proceeds are property of the estate directly affects the "best interest"/liquidation analysis found in § 1325(a)(4) which provides that "the court shall confirm a plan if… the value, *as of the effective date of the plan*, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1325(a)(4) (emphasis added). Although the Debtors and the Trustee agree that § 1325(a)(4) applies to

---

[3] Both parties agree, and this Court finds, that the projected disposable income test of § 1325(b) is inapplicable here. This Court, in *In re Salpietro*, 492 B.R. 630 (Bankr. E.D.N.Y. 2013), found that "the 'projected disposable income' analysis of section 1325(b) should not be determinative as to whether the court should approve an *upward* plan modification under section 1329." *Salpietro*, 492 B.R. at 638-9 (emphasis added). While *Salpietro* dealt with only a trustee's motion to upwardly modify, the Court finds that the exclusion of § 1325(b) from § 1329 is equally applicable to a downward modification proposed by a debtor because § 1329 neither expressly nor implicitly incorporates the requirements of §1325(b)'s projected disposable income test.

modifications, they disagree about what date should control as the "effective date of the plan." The Debtors contend that the confirmation date of the original confirmed plan is the effective date, whereas the Trustee argues that the date of modification of the plan controls. A liquidation analysis conducted at the time of the original plan confirmation, as proposed by the Debtors, would not include the Sale Proceeds.

There is some disagreement among courts as to what date is the "effective date of the plan" for modification purposes. The majority hold that courts must determine the best interests of creditors test as of the effective date of the modified plan. *In re Auernheimer*, 437 B.R. 405 (Bankr. D. Kan. 2010) ("The majority position… is that the effective date of a plan modification is the date of the modification rather than the effective date of the initial confirmed plan"); *In re Brown*, 332 B.R 562 (Bankr. N.D. Ill. 2005) ("Having reviewed applicable precedent and commentary, the court concludes that the "best interests" or liquidation test is applied on the effective date of the modification."); *see also In re Moran*, 08-60201, 2012 WL 4464492 (Bankr. N.D. Tex 2012); *In re Wetzel*, 381 B.R. 247 (Bankr. E.D. Wis. 2008); *In re Stinson*, 302 B.R. 828 (Bankr. D. Md. 2003); *In re Morgan*, 299 B.R. 118 (Bankr. D. Md. 2003); *In re Jefferson*, 299 B.R. 468 (Bankr. S.D. Ohio 2003); *In re Nott*, 269 B.R. 250 (Bankr. M.D. Fla. 2000); *In re Barbosa*, 236 B.R. 540 (Bankr. D. Mass. 1999), *aff'd,* 243 B.R. 562 (D. Mass. 2000), *aff'd*, 235 F.3d 31 (1st Cir. 2000); *In re Martin*, 232 B.R. 29 (Bankr. D. Mass. 1999). The minority hold that the best interests of creditors test must be determined as of the date of the original plan confirmation because "[t]he effective date is not altered by modification of the plan, for the modified plan remains, ever constant, the plan." *See, e.g.*, *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 189 (B.A.P. 8th Cir. 1997); *In re Gibson*, 415 B.R. 735, 739 (Bankr. D. Ariz. 2009) ("This Court agrees with other courts that have held that 'effective date of the plan,' as it relates

to the 'best interest' test of § 1325(a)(4), applies only once and, therefore, is the same date under a modified plan as it was under the original plan.").

This Court is unpersuaded by the minority view. If the initial plan confirmation date is used to calculate the liquidation value for the best interests of creditors test for plan modification purposes, the test fails to account for any property of the estate acquired post-confirmation, which, as in this case, may be the very basis for modifying the plan. If the best interests of creditors test need not account for post-confirmation property, a debtor will always satisfy the test at modification because it was satisfied at the initial plan confirmation. The majority view, by accounting for property of the estate acquired post-confirmation, maintains the purpose of the best interests of creditors test at modification, ensuring that creditors receive at least as much as they would under a chapter 7 liquidation.[4] This Court, in following the reasoning of the majority view, finds that the effective date for purposes of the liquidation analysis in the context of a plan modification is the date of the modification.

Having found that the Sale Proceeds must be included in the liquidation analysis of the best interests test of § 1325(a)(4), this Court finds the Debtors must pay at least $122,000 pursuant to any proposed modified plan.

Although the projected disposable income test of § 1325(b) is not directly applicable to modifications under § 1329, any proposed modification does need to be feasible as provided in §1325(a)(6), i.e., "the debtor will be able to make all payments under the plan and comply with the plan; . . .", and the proposed modification must be proposed in good faith as provided under §1325(a)(3). Unless the parties can come to some agreement on the numbers, the Court will hold

---

[4] Additional evidence that Congress intended the effective date to be the date of the modification is the Congressional statement that "the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan." H.R. Rep. No. 595, 95th Cong., 1st Sess. 431 (1977).

a further hearing to determine the amount by which the Debtors' regular monthly plan payments should decrease, if at all, as a result of the loss of Sharon's employment.

## CONCLUSION

The Debtors' motion is denied in part, to the extent it seeks a declaration that the Sale Proceeds are not property of the estate. This Court concludes that the Plan shall be modified to include the Sale Proceeds within the minimum proposed distribution to creditors. The proposed modification shall also account for the Debtors' loss of employment income. A further hearing will be conducted on **September 25, 2014 at 11:00 a.m**. in order to determine the amount by which the Debtors' monthly plan payments shall be modified to account for both the inclusion of the Sale Proceeds within the liquidation analysis, and the Debtors' loss of employment income.



Dated: Central Islip, New York
August 12, 2014

Robert E. Grossman
United States Bankruptcy Judge